IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


WENDY L. PRIESTMAN,                                    CV 07-6019-MA

              Plaintiff,                      OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


           Defendant.

      KATHRYN TASSINARI
      DREW L. JOHNSON
      1700 Valley River Drive
      Eugene, OR  97401

          Attorneys for Plaintiff

      KARIN J. IMMERGUT
      United States Attorney
      NEIL J. EVANS
      Assistant United States Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, OR  97204-2902

      JEFFREY BAIRD
      Special Assistant United States Attorney
      Social Security Administration
      701 5th Avenue, Suite 2900 M/S 901
      Seattle, WA  98104-7075

          Attorneys for Defendant

MARSH, J:


Page -1- OPINION AND ORDER

The matter before the Court is plaintiff, Wendy L. Priestman's, Social Security complaint (#1), brought under 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, which denied her application for disability insurance benefits (DIB).  For the reasons that follow, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## BACKGROUND

Priestman applied for DIB November 6, 2003, alleging she became disabled June 6, 2003 due to fibromyalgia.  At that time she was 45 years old, with a GED and Associates Degree in Criminal Justice, and past work as a legal assistant and purchasing agent.

Priestman requested a hearing after her application was denied initially, and upon reconsideration.  A hearing was held before an Administrative Law Judge (ALJ) on April 6, 2006, at which time Priestman was represented by counsel.  On August 22, 2006, the ALJ issued a written decision denying Priestman's claim, after which the Appeals Council denied Priestman's request for review, making the ALJ's decision the final, reviewable decision of the Commissioner.

On appeal to this Court, Priestman argues that the ALJ erred by (1) not providing clear and convincing reasons for rejecting her testimony; (2) failing to find that Priestman suffers from

"severe" spondylosis, thoracic outlet syndrome, and depression at step two of the sequential evaluation; (3) not providing clear and convincing reasons for rejecting the opinion of Tim Hindmarsh, M.D., that Priestman would likely miss more than two days of work per month; and, (4) failing to "give proper credit" to lay witness testimony.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Page -3- OPINION AND ORDER

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found that Priestman had not engaged in substantial gainful activity during the period under review. *See* 20 C.F.R. § 404.1520(b).

At step two the ALJ found Priestman established severe fibromyalgia, and non-severe mental impairments, radiculopathy, and neuropathy. *See* 20 C.F.R. § 404.1520(c).

At step three the ALJ found that Priestman's impairments did not meet or equal the requirements of a listed impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

The ALJ assessed Priestman with the RFC to lift 20 pounds occasionally and 10 pounds frequently, to stand/walk six hours per day, and to sit six hours per day.  Additionally, the ALJ found Priestman limited to only occasional climbing of ramps and stairs, only occasional crouching, crawling, kneeling, bending or stooping, absolutely no climbing of ladders, ropes, scaffolds, absolutely no overhead work, and the need to avoid concentrated exposure to extreme heat or cold and to vibrations.  20 C.F.R. §§ 404.1520(e), 404.1545; SSR 83-10.

At step four the ALJ found Priestman failed to meet her burden of showing she was no longer able to perform her past relevant work as a legal assistant or purchasing agent.  Therefore, the ALJ concluded that Priestman was not disabled at step four, and he did not proceed to step five of the sequential evaluation.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

## DISCUSSION

After a thorough review of the record and the ALJ's opinion, I concur with the Commissioner the evidence overwhelmingly points to Priestman's addiction to narcotic medication as the "theme" of this claim.

The ALJ rejected Priestman's testimony principally because her medical records reveal that she is an addict, whose subjective reporting cannot be trusted.  Her medical records chronicle a transition from approximately 15 years of alcohol abuse to abuse of prescription narcotics.  As the ALJ noted, Priestman was initially prescribed narcotics by Mathew Bain, M.D., in April 2003, around the time she had gallbladder surgery and a hysterectomy.  By July 2003 Piestman was five to six weeks post-op and still complaining of pain.  She told Dr. Bain her purse had been stolen and she needed an immediate refill of narcotics.  Not long thereafter, Bain indicated that he would begin tapering Pressman off narcotics.  Priestman then shopped for a new doctor who would prescribe narcotics, and found Tim Hindmarsh, M.D.

Dr. Hindmarsh's progress notes reveal that Priestman increasingly complained of diffuse muscle and joint pain, fatigue, and increasing depression and hopelessness despite several years of managing her depression with psychotropic medication.  By August 2003, Priestman asked Dr. Hindmarsh if she could have fibromyalgia.  Without any apparent knowledge of Priestman's objective medical history, and without performing the standard "trigger point" examination used to diagnose fibromyalgia, Dr. Hindmarsh Priestman a "possible" diagnosis,

Page -6- OPINION AND ORDER

noting that she was tender "virtually wherever you touch."  The
ALJ noted the use of narcotics is generally contra-indicated for
the treatment of fibromyalgia.  The ALJ also noted that Priestman
did not comply with Dr. Hindmarsh's other prescription – to
exercise.

By February 2004 Dr. Hindmarsh added the opiod analgesic
Fentanyl to Priestman's long list of prescription medication.
Although the Fentanyl patch was intended to help taper
Priestman's narcotic use, by March 2004 she needed even more
Percocet to be comfortable.  By late 2004 Priestman was
complaining of major sleep disturbances, and was taking a variety
of sleep aides to help her sleep at night, although she was
sleeping a lot during the day.  In December 2004, Priestman
underwent an evaluation for her chronic fatigue and excessive
daytime somnolence.  Not surprisingly, the principal cause of her
sleep difficulty was determined to be the "side effects of
narcotics and the benzodiazapines."

Nevertheless, Priestman continued taking these medications,
and by June 2005 she again reported that her purse had been
stolen with her medications inside.  Dr. Hindmarsh's staff told
Priestman to obtain a copy of the police report she claimed to
have made, before refilling her prescriptions.  However, after
Priestman refused to produce a police report she stated that she

was "highly addicted" to Xanax and had an emergent need for an
immediate refill.  Donald Gallup, M.D., who was filling in for
Dr. Hindmarsh, agreed to refill her prescriptions, evidently
because he felt sudden withdrawal from Xanax could be dangerous.
However, Dr. Gallup noted that he suspected Priestman had
overused her medications, calling her story "convoluted," and he
suggested Priestman should find a new doctor since she was moving
out of town anyway.  An August 2005 progress note indicates that
Dr. Hindmarsh also told Priestman that he would be refilling her
prescription for the last time and that she needed to find a new
doctor in Coos Bay.

     Dr. Hindmarsh inexplicably continued seeing Priestman, and
refilling her medications, even after she moved out of town.  As
a result, the ALJ inferred that Priestman made the long commute
to see Dr. Hindmarsh because he was a ready source of narcotics,
and Dr. Hindmarsh continued to see Priestman because he accepted
her subjective reports at face value.

     Against this backdrop the ALJ reviewed Dr. Hindmarsh's April
3, 2006 opinion that Priestman could not sustain a full-time job
because she would "clearly miss more than two days a month of
work."  The ALJ afforded this opinion "minimal weight,"
concluding that Dr. Hindmarsh was enabling Priestman's
prescription drug abuse, that he uncritically accepted

Priestman's self reports, he lacked experience with fibromyalgia, evinced by his reliance on another doctor's diagnosis, and his contra-indicated treatment approach, and his opinion was inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(listing factors for evaluating a treating physician's opinion).  These were specific and legitimate reasons for rejecting Dr. Hindmarsh's opinion. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)(when a treating physician's opinion conflicts with that of another physician of record, the ALJ may reject it for specific and legitimate reasons).

The ALJ summarized his doubts about Priestman's credibility by stating that it was impossible to know whether her subjective reports were "driven by drug seeking behavior, either in combination with medical impairments or instead of medical impairments."  The ALJ also noted many inconsistencies in Priestman's direct reports to the Social Security Administration. One example is that Priestman stated she was so dependant on her husband he had to help her use the toilet, yet she later moved to Coos Bay to live by herself, drove herself around town and to other towns, prepared her own meals, and did some yard work and housework.  Finally, the ALJ found Priestman failed to follow the prescription of several of her treating doctors to exercise.  The ALJ concluded that Priestman's explanation that she doesn't feel

Page -9- OPINION AND ORDER

like exercising, was not an acceptable reason, 20 C.F.R. §
404.1530(a), and cast doubt on her professed desire to improve.

In light of the foregoing, I do not find any merit to
Priestman's claims that the ALJ wrongly rejected her credibility.
The above reasons are among the most clear and convincing I have
encountered for discrediting a claimant's testimony. *See Rollins
v. Massanari,* 261 F.3d 853, 856-57 (9th Cir. 2001)(listing
examples of "clear and convincing" reasons, such inconsistency
between a claimant's alleged limitations and her activities of
daily living).

Priestman's claim that the ALJ failed to "give proper
credit" to her husband's testimony is similarly without merit.
Her husband simply reported that Priestman loses her train of
thought, lacks concentration, and has low tolerance of other
people.  The ALJ stated that "this reporting is accepted as
descriptive of the witnesses' perceptions," however he did not
incorporate any associated limitations in Priestman's RFC
assessment.  If this amounts to a failure to give germane reasons
for rejecting a lay witness' testimony, this error was harmless,
at worst, because no reasonable ALJ, even fully crediting this
testimony, could have reached a different disability conclusion.
*See Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Priestman's remaining claim is that the ALJ's step two
severity finding is flawed because the ALJ did not point to

Page -10- OPINION AND ORDER

substantial evidence to support finding that Priestman does not suffer from "severe" spondylosis, thoracic outlet syndrome, and depression.  The burden was on Priestman to prove her alleged impairments were "severe,"[1] not on the ALJ to prove they were not severe.

I find the ALJ reasonably concluded that Priestman did not meet her burden with respect to her allegedly severe spondylosis and thoracic outlet syndrome, as the medical evidence did not even establish that Priestman suffered from medically determinable radiculopathy or neuropathy, despite numerous electrodiagnositic studies of her back.  While there is evidence of mild to moderate spinal stenosis at two locations on her spine, overall there was "no evidence of signficant disk degenerative change" and "no spinal canal neural foraminal stenosis to explain [Priestman's alleged] radiculopathy."

Finally, the ALJ stated that although Priestman did have medically determinable depression, it was "well controlled" with medication, and therefore did not cause work-related functional limitations.

---

[1]A claimant can prove she suffers from a "severe" impairment, at step two of the sequential evaluation, by establishing (1) that it is a "medically determinable physical or mental impairment," and (ii) that it significantly limits her physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1504, 404.1520(c); *see also Edlund*, 253 F.3d at 1159-60.

In summary, I find the ALJ's determination that Priestman was not disabled because she remains capable of performing her past relevant work is supported by substantial evidence and is free of legal error.

<u>**CONCLUSION**</u>

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _4_ day of October, 2007.

<u>/s/  Malcolm F. Marsh</u>
Malcolm F. Marsh
United States District Judge

Page -12- OPINION AND ORDER